JEFFREY S. BENICE, ESQ. State Bar No. 81583
BENICE LAW
*A Professional Law Corporation*
3080 Bristol Street
Sixth Floor, Suite 630
Costa Mesa, CA 92626
Telephone: (714) 641-3600
Facsimile: (714) 641-3604
Website: www.JeffreyBenice.com
E-Mail: JSB@JeffreyBenice.com

Attorneys for Defendant
RAYAN VANDERHOOF

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RAYAN VANDERHOOF,<br><br>Defendant. | Case No. 2:20-cr-00252-PD<br><br>**DEFENDANT RAYAN VANDERHOOF'S SENTENCING MEMORANDUM**<br><br>Sentencing Date:  September 1, 2021<br>Time:            2:00 p.m.<br>Location:        Courtroom of Hon.<br>                 Paul S. Diamond |

**DEFENDANT'S SENTENCING MEMORANDUM**

# MEMORANDUM

## 1.

### SUMMARY OF DEFENDANT'S SENTENCING POSITION

Defendant requests that her sentence based upon the Government's Motion pursuant to Section 5K1.1 and the factors set forth in paragraph 84 of the Presentence Investigation Report be *(1) probation or (2) if a sentence is imposed a sentence not exceed one (1) year and a day.*[1]

**A.  The Presentence Investigation Report ("PSR") Specifically Notes Substantial Mitigating Factors.**

First, in paragraph 84 of the PSR the Probation Officer explains that the actual loss suffered by Medicare as a result of Defendant's conduct was $6.9 million, **$13.3 million less** that the Government's original $20.2 million estimate. As the PSR acknowledges the guideline difference based upon the $6.9 million loss is an 18-level enhancement rather than a 20-level enhancement.

Second, the PSR explains that Defendant led a normal life as a housewife and mother to a now 12 year old daughter, Alexa. Defendant has sole custody of Alexa because of the death of her husband in December, 2016. She has one prior 2004 misdemeanor DUI criminal conviction and as the PSR acknowledged "*is likely not a significant risk to recidivate.*" [PSR at ¶84.] Defendant's sole prior conviction was a 2004 driving under the influence misdemeanor violation. Defendant described her personal background before her involvement in Olympus Medical Group ("OMG") in detail in her letter dated December 9, 2020 to the Court. [See, ¶19 of PSR]

Third, and most importantly, Defendant describes in her December 20, 2020 letter how she became involved in the Medicare related business that has led to her guilty plea:

> "*After my husband, Steve, died in December of 2016, I inherited a company which I was not then qualified to oversee. I had never operated a business or managed employees before. The first two or three years I ran the company comprised a brutally steep learning*

---

[1] This Memorandum is filed two days after receipt of the Government's 5K1.1 Motion.

*curve that taxed my limits as I learned from scratch how to run a business and how to repay approximately $400,000 in debt accumulated prior to my involvement.*

*At the start of the third year, I lost a knowledgeable veteran of the company, David Parker, my executive assistant, and good friend. Dave's unexpected passing due to heart failure in December 2018 was a major setback, as he had been invaluable to the business. Although the company and I suffered these great losses, I felt an overwhelming responsibility, both to move the company forward, and to do all I could to preserve the livelihood of the of the employees that had worked for my husband for years. Keeping Steve's spirit alive, I wanted to provide my daughter that legacy from her father and a sense of stability – that we could and would continue to build upon.*

*Since the company was already established with all the marketing agreements in place, I trusted and relied heavily on the management team regarding legal and administrative compliance matters, even though I knew the ultimate responsibility was mine. I initially met with a law firm to better understand any dangers or challenges I would likely face going forward. They advised me that I should have no obstacles to continuing the business. As time passed, I engaged attorneys and experts in the field to ensure we remained compliant as we navigated the fast-changing industry. I soon found that the laws and regulations surrounding Healthcare were extremely complex and that no one, including the attorneys, agreed on best practices in our methods and agreements, but I endeavored to always err on the side of caution after receiving all the legal and accounting input. I was interested in running a clean*

**DEFENDANT'S SENTENCING MEMORANDUM**

> *business that could grow and thrive partly by way of a good reputation and dependable service to our clients.*
>
> *As changes in the industry accelerated with each passing month, I came to realize that attorneys and others in the field were frequently changing their opinions and advice based on what was going on within the courts and agencies and their interpretations of it.*
>
> *The first business model was a percentage of revenue split on the back end with the DMEs, but then I learned that the fees now had to be paid up front at a flat fee per item. I did my best to change our business model to comply, thereby losing the revenue of most our clients who would not change or who felt the revenue split was more compliant. I then was advised that the flat fee had to be for the Marketing Service and not by the item. I changed our business model again to remain in compliance. The Pharmacy marketing followed suit, but the Lab marketing had remained uncertain, with no clear direction from the several attorneys and industry experts I consulted. Guidance from the labs and their attorneys was likewise unclear..."* [PSR at ¶19.]

Defendant accepts full responsibility for her actions that have led to her guilty plea. However, the facts clearly show that Defendant's violative conduct was not based upon a malicious refusal to comply with the law and regulations concerning Medicare and businesses doing business with Medicare. And the Government's 5K1.1 Motion confirms that Defendant from the inception of proffers with the Government was truthful and accepted full responsibility for the charges to which she has pled guilty. The PSR recognizes as well that *"...the manner in which the Defendant became involved in the instant offense (she inherited OMG following the death of her husband) may be another factor to evaluate..."*

These unique mitigating factors support Defendant's sentencing position. Further, if

1  incarcerated the only family members to care for her 12 year old daughter will be her brother and
2  sister in law. They have 4 children and both work. While they have agreed to care for Alexa if
3  required to do so it will be at a substantial hardship. Defendant's father and mother are
4  respectively 80 years and 62 years and too old to care for Alexa.

## 2.

## THE SENTENCING GUIDELINES

The Sentencing Guidelines are no longer mandatory, but instead establish a *"starting point"* for the district court's sentencing determination. <u>Gall v. United States</u>, 552 U.S. 38, 57 (2007); accord <u>Cunningham v. California</u>, 549 U.S. 270, 286-87 (2007). District courts must consider the Guidelines but should *"tailor the sentence in light of other statutory concerns, as well."* <u>Kimbrough v. United States</u>, 552 U.S. 85. 101 (2007). Specifically, courts must determine the appropriate sentence by considering all of the factors set forth in 18 U.S.C. § 3553(a). <u>Gall</u>, 552 U.S. at 49-50.

Section 3553(a) makes clear that the appropriate sentence is one that is *"sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2"* of Section 3553(a). These purposes include: the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense; promote respect for the law; to provide just punishment for the offense; the need for the sentence imposed to protect the public from further crimes of the defendant; and the kinds of sentences available. 18 U.S.C. § 3553(a)(2).

## 3.

## SECTION 3553(A) FACTORS

As explained, based upon the Government's 5K1.1 Motion and Section 3553(A) factors Defendant believes that the appropriate sentence is probation or incarceration not exceeding one year and a day.

A.  *<u>Aberrant Behavior — An Otherwise Blameless Life.</u>*

Defendant had one prior 2004 DUI misdemeanor conviction and until this wrongful conduct led a normal law abiding life. Nothing in her personal history could have predicted

**DEFENDANT'S SENTENCING MEMORANDUM**

that she would ever run afoul of the law in a Medicare billing scheme. She is a loving mother to a 12 year old daughter, Alexa, and despite her current severe legal problems, enjoys the continuing support of longtime friends and family. Thus, the arc of Defendant's life demonstrates that there is little *"likelihood that the defendant will commit other crimes."* § 4A1.3(b)(1). The PSR similarly confirms that *"she is likely to not recidivate."* These factors support a downward variance. *See, United States v. Pauley*, 511 F.3d 468 (4th Cir. 2007) (re-offense unlikely); *United States v. Beach*, 275 Fed. Appx. 529, 533-534 (6th Cir. 2008) (unpublished) (defendant was a better candidate for rehabilitation than the typical offender); *United States v. Stall*, 81 F.3d 276, 279 (6th Cir. 2009) (court found defendant less likely to re-offend than typical defendant).

**B.     *Post-Offense Rehabilitation and Exceptional Acceptance of Responsibility.***

The Supreme Court has recognized that post-offense rehabilitation *"may, in appropriate cases, support a downward variance from the now-advisory Federal Sentencing Guidelines range."* *Pepper v. United States*, U.S., 131 S. Ct. 1229, 1236 (2011) (considering post-sentencing rehabilitation). Although the *Pepper* Court's holding related to post-sentencing rehabilitation, the principles upon which the Court relied plainly hold as well in the context of post-offense, pre-sentencing rehabilitation. *See, e.g., United States v. Robertson*, 662 F.3d 871, 878 (7th Cir. 2011); *United States v. Stewart*, No. 8:09CR282, 2011 U.S. Dist. LEXIS 89767 at *6-8 (D. Neb. Aug. 11, 2011); see also *United States v. Shy*, 538 F.3d 933, 938 (8th Cir. 2008) (affirming a variance to probation for extraordinary post-arrest rehabilitation, noting that rehabilitation was genuine and the defendant was a positive contributor to society).

The Government and Defendant have set forth significant facts demonstrating Defendant's sincere contrition and affirmative efforts to atone for her offenses including substantial Government cooperation at possible personal risk. These facts support a downward variance.

**C. *Proportionality in Sentencing.***

Section 3553(a)(6) expressly exhorts the Courts *"to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar*

*conduct.*" The average sentence over the past 10 years for Medicare fraud in approximately 4 years. *See, Medicare Fraud Laws, Charges and Statutes of Limitations by Geoffrey Nathan, Esq., Nat'l Fed. Defense Lawyers Group, FederalCharges.com.(2021).* The average sentence for health care fraud generally is 30 months.

In a recent sentencing in the Southern District of Texas involving a $189 million Medicare fraud scam dating back almost 10 years, three of the key executives involved in the scam received sentences ranging from 30 months to 48 months. The primary *"ring leader"* received a sentence of 120 months. *See,* <u>USA v. Rouse, et al.</u>, U.S. District Court Case No. 4:17-cr-00134; "DOJ wraps up $189 million Medicare Fraud scam with executives sentencing." Dave Muoio, Fierce Healthcare, April 27, 2021.

Here, Defendant's conduct merits punishment by probation or alternatively a sentence of one year and a day. Defendant's conduct caused substantially less monetary loss than the defendants' conduct in <u>USA v. Rouse, et al.</u> and occurred over a much shorter time span. Key defendant executives received sentences in a range of 30 to 40 months. Defendant fully accepted responsibility for her wrongful conduct at the investigation's inception; and she has offered substantial assistance at possible personal peril to the Government.

## 4.

## CONCLUSION

For all of the foregoing reasons, Defendant requests a sentence of probation or incarceration not to exceed one year and a day. Defendant joins in the Government's request that all documents concerning sentencing be filed under seal. Defendant requests that this Memorandum be sealed. A form of Order is submitted concurrently with the Memorandum's filing.

Dated: August 27, 2021                     Respectfully Submitted,

_____
Jeffrey S. Benice
Attorney for Defendant
RAYAN VANDERHOOF

**DEFENDANT'S SENTENCING MEMORANDUM**

## CERTIFICATE OF SERVICE

I, Javaise Escoto, declare:

That I am a citizen of the United States and a resident of or employed in Orange County, California; that my business address is Benice Law, APLC, 3080 Bristol Street, Suite 630, Costa Mesa, CA 92626; that I am over the age of 18; and that I am not a party to the above-titled action.

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the Electronic Service List for this Case, on August 28, 2021, a copy of:

**DEFENDANT RAYAN VANDERHOOF SENTENCING MEMORANDUM**
**MOTION TO IMPOUND AND JOINDER IN GOVERNMENT'S MOTION TO IMPOUND**

This Certificate is executed on August 28, 2021 at Costa Mesa, California. I certify under penalty of perjury that the foregoing is true and correct.

_____
Javaise Escoto